**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR-14-21-BLG-SPW-CSO |
| Plaintiff, | |
| vs. | **FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
| HOWARD ORAN EMBRY | |
| Defendant. | |

I.     **INTRODUCTION**

On April 28, 2014, Judge Watters, in accordance with 28 U.S.C. §

636(b)(1)(B) and Rule 59(a), Fed. R. Crim. P., referred to the

undersigned Defendant Howard Oran Embry's ("Embry") Motion to

Suppress *(ECF 9)* and request for a *Franks* Hearing *(see ECF 10 at 15)*

for the purposes of conducting a hearing and issuing appropriate

findings and recommendations.  *ECF 21.*  Embry is charged by

Indictment with Felon in Possession of a Firearm, in violation of 18

U.S.C. § 922(g)(1), and Unlawful User of Controlled Substance in

Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).  *See*

*Indictment (ECF 1).*[1]  His pending motion seeks to suppress evidence obtained from a search of his apartment conducted by law enforcement on January 21, 2013.  *ECF 9.*

Embry asserts that the evidence obtained from the January 21, 2013 search should be suppressed because: (1) law enforcement entered his home without a valid warrant and without proper consent; (2) the warrants eventually obtained lacked probable cause or were otherwise invalid for failure to follow Federal procedure; and (3) if the warrants were valid, law enforcement went beyond the scope of the warrants by searching closed containers within the apartment.  *See Embry's Br. in Support of Mot. to Suppress and Dismiss (ECF 10).*  Embry's request for a *Franks* hearing seeks to test the veracity of the statements made by Detective Ken Tuss in the warrant application.  *Id. at 15.*

The Court held a hearing on May 5, 2014.  At the hearing, the parties agreed to present together the evidence and argument pertaining to both the request for a *Franks* hearing and motion to suppress.  Having considered the parties' arguments and submissions,

_____

[1]"ECF" refers to the document as numbered in the Court's Electronic Case Files.  *See The Bluebook, A Uniform System of Citation, § 10.8.3.*

the Court issues the following findings and recommendations, first addressing the request for a *Franks* hearing, and then addressing the motion to suppress.

## II.  BACKGROUND

The Court heard testimony from Sergeant Brian Korrell, Detective Mike Robinson, and Detective Ken Tuss – witnesses called by the United States – and Rachel Kynett, Lea Drosten, Teal Blank, and Embry – witnesses called by the defense.  The following facts, taken from the hearing testimony and exhibits attached to the parties' briefs, are undisputed except where specifically indicated.

On January 21, 2013, Billings Police Department dispatch received a phone call from Lea Drosten, manager of the Colton Heights Apartments.  Colton Heights is an apartment complex comprised of seven buildings.  Four of the buildings, located near 24th Street, are identical in appearance, each having two exterior entrances and a hallway that leads to the front door of the individual apartments. Embry resided in Apartment #1 in one of these buildings –  specifically at 2001 24th Street West, Apt. 1, Billings, Montana, 59102.

In her call to dispatch, Drosten indicated that an anonymous source had reported to her that the tenant in "Apartment #1" had

received a large quantity of marijuana the night before, and that it was being kept in the master bedroom closet.  Drosten reported that Embry resided in Apartment #1, and that she and a maintenance employee had smelled marijuana odor coming from this apartment on the evening prior.  She also indicated that when she had asked Embry about the odor, Embry had informed her that he had a medical marijuana card.

Based on this information, Sergeant Korrell ran a query on the status of Embry's medical marijuana card in the Montana state medical marijuana database using the name "Howard Embry."  The search report confirmed that Embry did have a medical marijuana card, and indicated "PATIENT / Y" and "STATUS / DENIED."  Korrell testified at the hearing that he assumed "denied" status meant that the card was invalid, but that he did not know for sure what the word "denied" implicated, and that he had received no training in how to interpret these queries.  He also stated that he called to confirm with the state whether Embry's card was valid, but could not reach anyone, presumably because January 21, 2013, was a legal holiday and the office was closed.

After running this initial query, sometime in the early afternoon

of January 21, 2013, Tuss, Korrell, and Detective Mike Robinson went to Embry's apartment to do a "knock and talk." Korrell initially stood around the corner out of view and Tuss and Robinson knocked on Embry's door. When Embry answered the door, Tuss informed him that law enforcement had received a complaint about the smell of marijuana coming from his apartment. Embry stated that he had a medical marijuana card and acknowledged that he had marijuana in his apartment. At Tuss's request, Embry retrieved his medical marijuana card, which he kept in a small jar along with his medical marijuana, and showed it to the officers. Embry told the officers that he possessed less than an ounce of marijuana.

Tuss took Embry's medical marijuana card, walked down the hall, a requested a second query of the card's status, this time using the card number to run the query. This second query resulted in an identical report of Embry's medical marijuana profile, also indicating "Patient/Y" and that the "status" was "denied." A photocopy of Embry's card indicates that it was issued on June 13, 2012, and expired on May 15, 2013, and further indicates that the "Registered Cardholder is His Own Provider." *See ECF 17-2.* The card also reflected Embry's old address of 1917 10th Avenue North in Billings.

Tuss informed Embry that his medical marijuana card was denied or invalid, and asked if he could enter the apartment to ensure that Embry possessed only the allowed amount. Embry refused Tuss's request to enter. Detective Robinson then asked Embry if he grew his own marijuana. Embry indicated that he did not and instead received marijuana from a provider.

The officers asked a second time for consent to search Embry's apartment, which Embry again denied. They then informed Embry that they would get a search warrant and that Embry was required to vacate the apartment in the meantime. Before Embry left the apartment complex, the officers performed a safety sweep of the residence, walking through the living room and both bedrooms. Each officer indicated that the purpose of a security sweep is to secure the apartment for officer safety and to ensure there is no one else present who might destroy potential evidence.

Embry testified that he asked the officers to inform him when they had obtained a search warrant and requested he see it before the search took place. He testified that the officers searched his person before he was allowed to leave. Embry started to lock the door before he left, but the officers suggested he leave it open. Embry testified that

he locked it anyway and left the apartment complex.

Embry testified that shortly after he left, he passed Drosten, the apartment manager, going into his building. He testified that he followed Drosten back toward the door of his apartment, waited around the corner, and heard Drosten use a key to open his locked door. He then walked around the corner to look through the laundry window and confirmed that the officers were no longer in the hallway.

The officers stated at the hearing that they did not enter the apartment after the sweep until they had obtained the search warrant. Instead, the officers testified that Tuss left to prepare the search warrant application, Korrell left and went to the office, and Detective Robinson, assisted by a uniformed patrol officer, remained at the residence. Drosten testified that she did not let the officers in to Embry's apartment until they had returned with the search warrant.

In the search warrant application, Tuss states that there exists probable cause to search Embry's residence for evidence of criminal possession of dangerous drugs, and criminal possession of drug paraphernalia, in violation of state law. *See ECF 10-1*. The search warrant application erroneously identifies the place to be searched as "2011 24th Street West Apartment #1." The application identifies this

incorrect address two additional times, but also indicates that the anonymous tip identified "2001 24th Street West Apartment #1" as the apartment containing the large amount of marijuana. The search warrant also identifies the incorrect 2011 24th Street West address as the place to be searched. At the hearing, Tuss testified that the incorrect addresses were due to his own drafting error, but stated that he had personally visited the apartment earlier that same day and had another officer remain at the correct apartment the entire time he was preparing the application. Tuss indicated that, despite the incorrect address on the face of the warrant, he knew which apartment was the target of the search.

Tuss testified that he did not submit the warrant application to an attorney for review prior to submitting it to the state district court judge.

Based on the application, the state judge executed a search warrant, authorizing the officers to search Embry's residence for evidence of criminal possession of dangerous drugs and criminal possession of drug paraphernalia. *See ECF 10-1 at 6-8.* The scope of the items to be seized pursuant to the search warrant included, among other things, methamphetamine, cocaine, marijuana and ecstasy;

papers relating to the transportation, ordering, purchasing, trafficking of controlled substances; cell phones and cell phone records; records of travel; weapons and firearms; and "[a]ny items that are contraband and are fruits of, have been used in the commission of, or may constitute evidence of these crimes[.]" *Id*.

Tuss returned to Embry's apartment with the search warrant, Drosten gave the officers a key to enter, and the officers performed a search of the residence. The officers found a suitcase containing seven large heat-sealed bags filled with what they suspected to be marijuana. They also found a handgun in the side pocket of the suitcase and several large bundles of cash estimated to be in the amount of several thousand dollars.

Based on the cash located during the search, Tuss prepared a second search warrant application. Tuss testified that because the original warrant did not explicitly authorize the seizure of proceeds from drug distribution, the officers decided to obtain a second search warrant before seizing the cash found in Embry's apartment. This second application sought a warrant authorizing the search and seizure of all evidence associated with the crimes of criminal possession of dangerous drugs, drug paraphenalia, and evidence of criminal

distribution of dangerous drugs, including "[p]roceeds of dangerous drug sales..." *ECF 10-1 at 10.* The state judge executed a second search warrant based on this second application.

Tuss returned to the apartment with the second warrant. The officers testified that they did not perform an additional search pursuant to the second warrant, but "tidied up" and then seized the marijuana, gun, and cash along with other evidence, and left two signed and dated property receipts in the residence.

## III.   *FRANKS* HEARING

### A.   Legal Standard

A defendant is permitted to challenge a warrant affidavit that is valid on its face "when it contains deliberate or reckless omissions of facts that tend to mislead." *United States v. Stanert*, 762 F.2d 775, 781 amended, 769 F.2d 1410 (9th Cir. 1985). The Fourth Amendment requires a hearing be held to make this determination, but only if the defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155 (1978). The inquiry

begins with "a presumption of validity with respect to the affidavit

supporting the search warrant." *Id*. at 171. "To mandate an

evidentiary hearing," the Supreme Court has explained,

> the challenger's attack must be more than conclusory and must be
> supported by more than a mere desire to cross-examine. There
> must be allegations of deliberate falsehood or of reckless
> disregard for the truth, and those allegations must be
> accompanied by an offer of proof. They should point out
> specifically the portion of the warrant affidavit that is claimed to
> be false; and they should be accompanied by a statement of
> supporting reasons. Affidavits or sworn or otherwise reliable
> statements of witnesses should be furnished, or their absence
> satisfactorily explained.

*Id*. A hearing is not necessary if, after setting aside the material that is

the subject of the alleged falsity or reckless disregard, there remains

sufficient content in the warrant affidavit to support a finding of

probable cause. *Id*. at 172. "On the other hand, if the remaining

content is insufficient, the defendant is entitled, under the Fourth and

Fourteenth Amendments, to his hearing." *Id*.

Clear proof of deliberate or reckless omission is not required;

"[s]uch proof is reserved for the evidentiary hearing." *Stanert*, 762 F.2d

at 781 (citation omitted). "At this stage, all that is required is that the

defendant make a substantial showing that the affiant intentionally or

recklessly omitted facts required to prevent technically true statements

in the affidavit from being misleading." *Id.* A mere "difference of opinion" as to the facts stated in an affidavit does not rise to a reckless omission. *See United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004) ("[Defendant] claims the affidavit intentionally or recklessly misled the [judge] by stating that [the defendant] sent the minor a sexually graphic photograph of a 'young boy' when, according to another officer, the photograph was a male of indeterminate age. This claimed discrepancy is a difference of opinion."); *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir.1987) ("The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit").

If after the limited evidentiary hearing the court concludes that the judge in issuing the warrant was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, then suppression is an appropriate remedy. *United States v. Stanert*, 762 F.2d 775, 780 amended, 769 F.2d 1410 (9th Cir. 1985) (citing *United States v. Leon*, 468 U.S. 897 (1984)).

**B.   Discussion**

The Court concludes that Embry has failed to make a substantial showing that Detective Tuss intentionally or recklessly omitted facts or deliberately made false and misleading statements in the warrant affidavits.  Embry did not submit a detailed offer of proof, but his counsel identified at the hearing in argument that Embry is challenging Tuss's representation that the officers did not enter the residence to search prior to obtaining the warrant.

After listening to the hearing testimony, the Court finds that Tuss did not make false or misleading statements or omissions in the warrant affidavit with respect to this fact.  Tuss stated that after the officers performed the safety sweep, he went to prepare the search warrant application while Detective Robinson remained outside Embry's apartment.  He stated that they did not perform a search until after he returned with the warrant.  This testimony was corroborated by Robinson, Korrell, and Drosten.  Embry has failed to raise sufficient facts disputing the testimony of these four witnesses.

Because the Court finds no deliberate falsehood or omission, Embry's challenge to the veracity of Tuss's statements in the warrant affidavit under *Franks* should be denied.

## IV. MOTION TO SUPPRESS

### A. Fact Issues

The Court first addresses and resolves a factual dispute raised by Embry at the hearing. As noted, Embry contends that the officers entered his apartment to begin the search after he left the building, but prior to obtaining the search warrant. Embry raised this fact dispute through his own testimony, testifying that shortly after leaving the officers at his door, he followed Drosten back to near his apartment and heard her open the door and let the officers back in.

This testimony is disputed by the testimony of Detectives Tuss and Robinson, Sergeant Korrell, and Drosten, who all testify that the officers did not enter the apartment prior to obtaining the warrant. Based on the weight of the evidence at the hearing, the Court resolves this dispute and finds that it is more likely than not that the officers did not search the residence prior to obtaining the search warrant. This was therefore not a warrantless search. The question, then, is whether the search warrant was supported by probable cause, and, if not, whether the good faith exception to the exclusionary rule should apply.

## B.     Probable Cause

Where, as here, a search is conducted by state law enforcement pursuant to a state warrant, and is not otherwise "federal in character," the warrant need only conform to the requirements of the Federal Constitution, rather than to the procedural requirements of Rule 41, Fed. R. Crim. P.  *See United States v. Bookout*, 810 F.2d 965, 967 (10th Cir. 1987).  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  *Id*.  "Probable cause means only a 'fair probability,' not certainty, and requires consideration of the totality of the circumstances."  *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006) (quoting *Gates*, 462 U.S. at 238).  Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place.  *United States v. Needham*, 718 F.3d 1190, 1194 (9th Cir. 2013) (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006)) (internal quotation omitted).  "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the

evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (citing *Illinois v. Gates*, 462 U.S. 213, 246 (1983)).

To withstand constitutional scrutiny, a warrant must particularly describe the place to be searched and the things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). A particular warrant prevents general searches, and "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Id.*, 540 U.S. at 561 (citation and internal quotation omitted). The "test for determining the sufficiency of the warrant description is whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir. 1985) (internal quotation omitted).

Embry challenges the warrant's validity because it erroneously identifies "2011 24th Street West Apt. 1" as the place to be searched, arguing that this incorrect address locates an existing apartment virtually identical in appearance to Embry's. Although the error should

not have been made (particularly because the warrant application had conflicting addresses in it), Embry's challenge fails. In *Turner*, the Ninth Circuit upheld a warrant even though the warrant identified the incorrect street address as the place to be searched. The court found that "there was virtually no chance that the executing officer would have any trouble locating and identifying the premises to be searched, or that he would mistakenly search another house" due to the fact that the house had been under surveillance before the warrant was sought, the warrant was executed by an officer who had participated in applying for the warrant and who personally knew which premises were intended to be searched, and the premises that were intended to be searched were those actually searched. *Turner*, 770 F.2d at 1511.

Here, Tuss had personally visited Embry's residence during the knock and talk prior to leaving to obtain the warrant. He testified that he knew which building and which door led to Embry's apartment. Detective Robinson and a uniformed patrol officer maintained constant surveillance of the apartment while Tuss prepared the warrant, and the officers correctly searched the premises the warrant intended. Under these circumstances, the wrong address in the warrant, alone, does not invalidate it.

The things to be seized must also be described with particularity in the warrant itself. *See Groh*, 540 U.S. at 557. The warrant here indicates that its scope includes evidence of criminal possession of dangerous drugs and criminal possession of drug paraphernalia. It goes on to list, as noted above, a very broad scope of potential items to be seized, including many items related to drug trafficking and distribution. Both search warrants issued also include the broad catchall phrase "[a]ny items that are contraband and are fruits of, have been used in the commission of, or may constitute evidence of these crimes[.]" The Ninth Circuit has found that this type of statement renders a warrant facially overbroad. *See United States v. Clark*, 31 F.3d 831, 836 (9th Cir. 1994) (warrant facially overbroad when it included a catchall phrase authorizing seizure of "fruits and instrumentalities of [a] violation of 21 U.S.C. § 841(a)(1)"). But the Ninth Circuit has also held that some catchall phrases such as "may include, but is not limited to," may be adequately limited by the context of the warrant. *United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000) (context of authorization to search for "evidence of the possession, manufacture, and delivery of the controlled substance methamphetamine" adequately limited catchall phrase in warrant).

The evidence subject to this motion to suppress includes the marijuana and drug paraphernalia, the firearm, and the cash. Despite the warrants' apparent overbreadth, they did particularly describe marijuana, paraphernalia, firearms, and cash as items to be seized. The Court therefore focuses its inquiry on whether probable cause existed to search for these items.

Tuss' warrant affidavit and the officers' hearing testimony indicate that the facts the officers relied on to form the basis for probable cause were (1) the informant's tip, (2) statements from Drosten concerning Embry's medical marijuana card and the marijuana smell permeating from his residence, (3) queries ran on the status of Embry's medical marijuana card, and (4) the fact that Embry possessed a small amount of marijuana. The Court evaluates each item in turn.

## C.     Informant's Tip

When a search warrant is based solely on an informant's tip, courts assess whether probable cause exists from the totality of the circumstances to determine a sufficient level of reliability and basis of knowledge for the tip. *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001) (citing *Gates*, 462 U.S. at 238). "[H]ighly relevant" to the inquiry "is the informant's veracity, reliability, and basis of

knowledge[.]"  *United States v. Morales*, 252 F.3d 1070, 1074 (9th Cir.

2001) (quoting *Alabama v. White*, 496 U.S. 325, 328 (1990)).  "An

anonymous tip standing alone does not demonstrate an informant's

veracity or reliability because an anonymous tipster cannot be held

accountable if he or she provides inaccurate information, and the police

cannot assess the tipster's reputation.  *Id.* (citing *Florida v. J.L.*, 529

U.S. 266, 270 (2000).  The Supreme Court requires "something more"

than the anonymous tip alone to establish reasonable suspicion that

criminal activity is afoot.  *Id.* (quoting *White*, 496 U.S. at 329).  As the

Ninth Circuit has explained:

> [W]hat the Supreme Court teaches in *Gates*, *White*, and *J.L.* is
> that in order for an anonymous tip to serve as the basis for
> reasonable suspicion:
>
> > (1) the tip must include a "range of details;"
>
> > (2) the tip cannot simply describe easily observed facts and
> > conditions, but must predict the suspect's future
> > movements; and
>
> > (3) the future movements must be corroborated by
> > independent police observation.

*Morales*, 252 F.3d at1076 (formatting added).

Another factor courts consider in reviewing the totality of the

circumstances is the informant's basis of knowledge, and courts look for

"how the informant came by his or her knowledge." *Bishop*, 264 F.3d at 925 (quoting *United States v. Angulo–Lopez*, 791 F.2d 1394, 1396 (9th Cir.1986)). When there is some doubt as to an informant's motives, an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitled [a] tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234. The Ninth Circuit found in *Bishop* that an informant's tip was reliable, in part, because it was based on first-hand knowledge and personal observation, rather than hearsay. *Bishop*, 264 F.3d at 925.

The veracity and reliability of an informant's information may be demonstrated through independent police corroboration. *Bishop*, 264 F.3d at 925. The totality-of-the-circumstances analysis recognizes "the value of corroboration of details of an informant's tip by independent police work." *Gates*, 462 U.S. at 241. In *Gates*, the police received an anonymous letter stating that a husband and wife sold drugs. The letter described in detail the movements each person made by car and plane, explaining that the wife would drive to Florida and load the car with drugs while the husband would fly down and drive the car back. *Id*. at 225. Subsequent police observation confirmed most of the letter's predictions.

The Court noted that the anonymous letter itself provided "virtually nothing from which one might conclude that its author is either honest or his information reliable; likewise, the letter gives absolutely no indication of the basis for the writer's predictions regarding the Gates' criminal activities." *Id.* at 227. The letter, "standing alone," would therefore not provide the basis for a determination of probable cause to believe contraband would be found in the Gates' care and home. *Id.* Nonetheless, the Court held that the tip was reliable under the totality of the circumstances because independent police observation confirmed almost all of the details that the tipster had provided. *Id.* at 244. "It is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." *Id.* at 244-45 (citation and internal quotation omitted).

Here, the officers confirmed at the hearing that the first search warrant relied on the anonymous tip relayed to them second-hand through Drosten. This tip alleged only the following facts: (1) the resident in apartment #1 has 10 pounds of marijuana in the apartment; (2) the marijuana is kept in the master bedroom closet; and (3) the

marijuana arrived the night before.  *See Warrant Affidavit (ECF 10-1) at 4.*

This anonymous tip lacks the requisite specificity and police corroboration to support a basis for probable cause.  The anonymous tip does not identify Embry by name or other description, does not specify how the marijuana came to arrive in "apartment #1" or who may have delivered it, and does not indicate how or when the informant came to know this information.  The tip does not include predictions of Embry's future movements or any other details.

Moreover, the tip is completely uncorroborated by independent police observation.  The officers did not surveil Embry's apartment, interview nearby tenants or other potential witnesses, or perform any type of independent investigation.  Merely confirming that Embry has a medical marijuana card and an otherwise legal amount of marijuana if the card is valid is insufficient corroboration.  *See United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994) ("[A]n anonymous tip is entitled to little or no weight in a probable cause evaluation if it is entirely uncorroborated and lacks any indication of reliability.  Mere confirmation of innocent static details in an anonymous tip does not constitute corroboration").

Because this tip lacked any indicia of reliability, and stood completely uncorroborated, it was insufficient to form a basis for probable cause to search Embry's apartment for evidence of drug trafficking. When the statements made in an informant's tip are found to be unreliable, probable cause must be analyzed without those statements. *See Bishop*, 264 F.3d at 924 ("Once the district court determined that the search warrant included illegally obtained information, it properly purged the affidavit of the offending facts and examined whether the remaining facts still afforded a substantial basis for concluding that the search warrant was supported by probable cause"); *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000).

## D. <u>Other Bases for Probable Cause</u>

Excising the unreliable anonymous tip, the Court must conclude that the warrant authorizing the search of Embry's apartment lacked probable cause. The only facts the officers had at their disposal before applying for the warrant were (1) Drosten's statements about a marijuana odor permeating from Embry's house on days prior to January 21, 2013, (2) Tuss's queries showing that Embry's medical marijuana "status" was "denied," and (3) the fact that Embry admitted that he possessed a small amount of marijuana. This information,

without more, is clearly insufficient to establish probable cause to believe that Embry possessed a larger amount of marijuana or that he possessed weapons, or that Embry was trafficking drugs.

The officers assumed, erroneously, that the query result "status / denied" meant that Embry's card was invalid. Rachel Kynett, manager of the Montana medical marijuana program, testified that a query will report this status when her office receives a duplicate application from a patient who already has a medical marijuana card, and the duplicate application is denied. But, as Kynett made clear, this does not mean a card is invalid; a query indicates a valid medical marijuana card if it indicates "Patient / Y." Kynett testified that had the officer asked her, she would have indicated that Embry's medical marijuana card was valid.

Furthermore, the query result could not lead the officers to probable cause to search Embry's residence. Assuming Embry's card was invalid, Embry's possession of the small amount of marijuana, that he personally showed to the officers, would be criminal possession. The officers need only have confirmed that Embry was not authorized to possess the marijuana they saw him possessing to charge him with a violation of Montana law. Thus, even a questionable status of Embry's

ability to legally possess the small amount of marijuana does not lead to probable cause to search his residence.

Finally, the fact that the officers knew Embry was a marijuana user cannot support the conclusion that Embry was trafficking drugs. *See United States v. Underwood*, 725 F.3d 1076, 1082 (9th Cir. 2013) (police observation of personal-use amount of marijuana did not indicate that defendant was trafficking other drugs).

The Court has considered all the facts the officers alleged in the warrant application to demonstrate probable cause. Having done so, the Court concludes that this is not the "close case" in which the Supreme Court has expressed a policy of preference accorded to upholding warrants. *See Gates*, 462 U.S. 237, n. 10 (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). The search warrant here clearly lacked probable cause, rendering the intrusion into Embry's residence in violation of the Fourth Amendment. The exclusionary rule is triggered, then, unless an exception applies.

### E.    <u>Good Faith Exception to Exclusionary Rule</u>

Even if a warrant is unsupported by probable cause, suppression of the evidence found in a search pursuant to that warrant is not justified if the officers' reliance on the judge's determination of probable

cause was objectively reasonable.  *United States v. Needham*, 718 F.3d

1190, 1194 (9th Cir. 2013) (quoting *Leon*, 468 U.S. at 926).  The United

States, not the defendant, bears the burden of proving that its agents'

reliance upon the warrant was objectively reasonable.  *United States v.*

*Corral-Corral*, 899 F.2d 927 (10th Cir. 1990).

      For the good faith reliance exception to apply, the affidavit must

establish "at least a colorable argument" for probable cause, and the

officers must have relied on the search warrant in an objectively

reasonable manner.  *United States v. Krupa*, 658 F.3d 1174, 1179 (9th

Cir. 2011) (citations omitted).

      The inquiry is not what the executing officer believed, or could

have believed, but "whether a *reasonably well trained officer* would

have known that the search was illegal despite the [judge's]

authorization."  *United States v. Luong*, 470 F.3d 898 (9th Cir. 2006)

(emphasis added).  The Court in *Leon* identified four situations that per

se fail to satisfy the good faith exception.  In these situations, "the

officer will have no reasonable grounds for believing that the warrant

was properly issued."  *United States v. Underwood*, 725 F.3d 1076, 1085

(9th Cir. 2013) (quoting *Leon*, 468 U.S. at 922-23).

      The four situations are: "(1) where the affiant recklessly or

knowingly placed false information in the affidavit that misled the issuing judge; (2) where the judge wholly abandon[s] his [or her] judicial role; (3) where the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Id*. (internal quotations omitted). If any of these four situations apply, the Court "need not inquire further" and can conclude that the good faith exception to the exclusionary rule does not apply. *Id*. The third situation, often referred to as a "bare bones" affidavit, applies in this case.

In *Underwood*, the Ninth Circuit found that the bare bones affidavit in support of a search warrant rendered the good faith exception inapplicable. There, the affidavit failed to set forth a sufficient factual basis for the conclusion that the defendant was a courier for an ecstasy trafficking organization, despite the fact that law enforcement had observed the defendant with small amounts of personal-use marijuana, a prior federal warrant had been issued for defendant's residence, and law enforcement observed the defendant

delivering two wooden crates to known drug traffickers.  *Underwood*,

725 F.3d at 1083-86.  The court found the affidavit deficient because it

lacked accompanying facts to support an inference that the crates

contained drugs or that the defendant should have known they

contained drugs.  *Id*.  The court concluded that "[r]easonable judges

would agree that probable cause did not exist to search Underwood's

Mansa Drive house because the affidavit provides only the most

attenuated support for the conclusion that Underwood is a drug courier

and no support for the conclusion that drug trafficking evidence would

be found at Mansa Drive."  *Id*.

The affidavit here is similarly, if not more, deficient.  It contains

allegations that Embry is a medical marijuana user, that he possesses a

small amount of marijuana, and that the smell of marijuana permeates

from his residence.  The officers admitted that they were guessing as to

the status of Embry's medical marijuana card.  These factors are wholly

insufficient to establish probable cause.  The officers also improperly

relied on the information from the uncorroborated anonymous tip.  *See*

*Luong*, 470 F.3d at 903 (finding good faith exception inapplicable

because the affidavit was "critical[ly] deficien[t]" in that it relied "on an

unverified tip as the lynchpin for its theory of probable cause").  Under

the cited Ninth Circuit authority, the Court must conclude that the good faith exception to the exclusionary rule is inapplicable here, because the affidavit supporting the search warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The evidence obtained pursuant to the search warrant should therefore be suppressed under the exclusionary rule.

## F.     Exclusionary Rule

The "prime purpose of the exclusionary rule is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Sears*, 411 F.3d 1124, 1128 (9th Cir. 2005) (quoting *Illinois v. Krull*, 480 U.S. 340, 347 (1987). The Supreme Court has instructed:

> As with any remedial device, application of the exclusionary rule properly has been restricted to those situations in which its remedial purpose is effectively advanced. Thus, in various circumstances, the Court has examined whether the rule's deterrent effect will be achieved, and has weighed the likelihood of such deterrence against the costs of withholding reliable information from the truth-seeking process.

*Id.* (quoting *Illinois v. Krull*, 480 U.S. 340, 347 (1987). "In the interest of deterrence, evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged

with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* (quoting *Illinois v. Krull*, 480 U.S. at 348-49) (internal quotation omitted); *see also United States v. Leon*, 468 U.S. 897, 918, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ("[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.").

The Ninth Circuit has identified three factors that determine whether the exclusionary rule should be applied in a particular case:

(1)    whether suppression would affect the group conduct that the exclusionary rule was designed to punish, i.e., police misconduct;

(2)    the source of the error in the particular case and whether any evidence suggested that the source, e.g., issuing magistrates, was inclined to ignore or subvert the Fourth Amendment; and

(3)    the basis for believing the exclusion of evidence will have a significant deterrent effect upon the source of the error.

*Sears*, 411 F.3d at 1128.  Suppression is not appropriate if "the incremental deterrent value would be minimal." *Id.* (quoting *New York v. Harris*, 495 U.S. 14, 20 (1990).

The Court finds that the exclusionary rule should apply to exclude the evidence obtained pursuant to the constitutionally defective search

warrant. Reasonably well-trained officers would have known of the need to corroborate a vague, anonymous, second-hand tip. Reasonably well-trained officers would know how to interpret a state-issued medical marijuana card, or would have sought confirmation from someone with such knowledge. Suppression here is warranted to further the goal of deterrence of future unlawful police conduct, and to effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.

Embry's other challenges to the validity of the search warrant should be denied as without merit.

## V. <u>CONCLUSION</u>

Based on the foregoing, IT IS RECOMMENDED that Embry's Motion to Suppress *(ECF 9)* be GRANTED, and his request for a *Franks* Hearing be DENIED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that objections to these Findings and Recommendations are waived unless filed and served within fourteen (14) days after the filing of the Findings and Recommendations. 28 U.S.C. § 636(b)(1)(B); Fed. R.

Crim. P 59(b)(2).

DATED this 7th day of May, 2014.

**/s/ Carolyn S. Ostby**
United States Magistrate Judge